*** FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCWC-19-0000618
11-FEB-2025
07:56 AM
Dkt. 9 OPA

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

RICHARD SCOTT WEBB,
Petitioner/Claimant-Appellant-Appellant,

vs.

OSF INTERNATIONAL, INC.,
Respondent/Employer-Appellee-Appellee,

and

HAWAII INSURANCE GUARANTY ASSOCIATION,
Respondent/Insurance Carrier-Appellee-Appellee.

SCWC-19-0000618

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-19-0000618; CASE NO. AB 2017-280; DCD NO. 2-99-04705)

FEBRUARY 11, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY GINOZA, J.

## I.   INTRODUCTION

The workers' compensation law in Hawaiʻi allows an

employee to reopen a claim within eight years after the last

payment of compensation.  Specifically, Hawaiʻi Revised Statutes

(**HRS**) § 386-89(c) (2015) provides in relevant part:

> On the application of any party in interest, supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, <u>at any time prior to eight years after date of the last payment of compensation</u>, whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation.

(Emphasis added.)

Petitioner-Claimant Richard Scott Webb (**Webb**) submitted an application in 2017 to reopen his claim. Respondent-Employer OSF International, Inc. (**OSF**) challenged Webb's application because the last payment on Webb's claim had been made twelve years before in 2005.  The Director of the Department of Labor and Industrial Relations (**Director**), through the Disability Compensation Division (**DCD**), denied Webb's application to reopen his claim on grounds it was barred by the eight-year limit under HRS § 386-89(c).  The Department of Labor and Industrial Relations Appeals Board (**LIRAB**) affirmed the Director.  However, the three-member LIRAB had differing views as to which party had the burden of proof on whether Webb's application for reopening occurred within the required time period.  The LIRAB majority stated claimant Webb had the burden of proof and failed to meet his burden.  In a concurring opinion, the remaining LIRAB member expressed the view that the

2

eight-year period in HRS § 386-89(c) serves as a statute of limitations for which employer OSF had the burden of proof, and that OSF met its burden.

Webb appealed the LIRAB decision to the Intermediate Court of Appeals (**ICA**). The ICA affirmed the LIRAB and placed the burden of proof on Webb to support his application for reopening his claim under HRS § 386-89(c).

We hold that the eight-year period in HRS § 386-89(c) for reopening a workers' compensation claim sets out a statute of limitations. As such, the employer has the burden of proof if it asserts that an application for reopening a claim is untimely under HRS § 386-89(c).

In this case, we conclude that employer OSF met its burden of proof to show that Webb did not reopen his claim within the statutory eight-year period. We further conclude that Webb's other challenges to the ICA's Summary Disposition Order (**SDO**) are without merit. For the reasons set forth herein, we affirm the ICA's Judgment on Appeal.

## II.  BACKGROUND

### A.  Work Injury and Stipulation

On April 1, 1999, Webb sustained a work injury as a waiter at the Old Spaghetti Factory restaurant. On May 7, 2002, a stipulation and settlement agreement was entered between Webb, OSF, and OSF's insurance carrier, Respondent-Insurance Carrier

Hawaii Insurance Guaranty Association (**HIGA**), which was approved by the Director through the DCD.  The stipulation provided that, without prejudicing Webb's "rights respecting reopening under [HRS] Chapter 386," Webb "sustained an injury to his back and left hip out of and in the course of his employment with [OSF], on or about 04/01/99[;]" and that as a result of said injury, Webb "sustained permanent partial disability, to wit: 12% of the left lower extremity."  The stipulation also provided for a lump sum payment of $17,936.64 for the permanent partial disability, and that OSF was to furnish Webb "so long as reasonably necessary, such medical care, services and supplies as the nature of the injury may require, pursuant to [HRS] Section[s] 386-21 [(2015)] and 386-26 [(2015)][.]"[1]

**B.    2003 DCD Proceedings**

On August 10, 2002, Dr. Coswin Saito, M.D. (**Dr. Saito**), Webb's physician at Kaiser Permanente, submitted a treatment plan with a diagnosis of "mechanical low back pain" for additional services and for acupuncture treatments.  HIGA advised Dr. Saito that it was denying the acupuncture treatment because it had not received a report indicating the need for further treatment from Dr. Saito since July 16, 2000, and because Dr. Donald Maruyama (**Dr. Maruyama**) had indicated that

---

[1]     Webb does not argue, and thus we do not address, whether the stipulation affected application of the eight-year period under HRS § 386-89(c).

Webb's back condition/strain had resolved and no further treatment was recommended.  Webb contested HIGA's denial of Dr. Saito's treatment plan and requested review by the DCD.

On February 5, 2003, the DCD held a hearing to determine OSF's liability for Dr. Saito's treatment plan.  On March 12, 2003, the Director through DCD issued a decision (**2003 DCD Decision**) denying Dr. Saito's treatment plan because the low back condition was not due to the 1999 work injury.  The Director credited concurring opinions by Dr. Porter Turnbull, Dr. Maruyama and Dr. Maurice Nicholson that Webb's low back strain had resolved, and an MRI showing normal lumbar vertebral bodies and disc spaces.  The Director found, however, that OSF was still liable for Webb's left leg/hip pain.  The 2003 DCD Decision concluded:

> Pursuant to Sections 386-21 and 386-26, HRS, said employer shall pay for such medical care, services and supplies as the nature of the injury may require to the left hip, but not to include the low back.  [Dr. Saito's treatment plan] request for acupuncture treatment with respect to mechanical low back pain beginning 7/2002 to 10/2002 is denied.  Dr. Saito is advised to resubmit a treatment plan request for acupuncture treatment with respect to [Webb's] diagnosis of a possible femoral neuropathy pursuant to Sections 12-15-32 and 12-15-80 of the Workers' Compensation Medical Fee Schedule Administrative Rules.

(Emphases added.)

There was no appeal from the 2003 DCD Decision.

**C.   Last Payment of Compensation in 2005**

On October 18, 2004, HIGA wrote to Dr. Saito requesting an updated report on Webb's treatment, noting that

its records showed Webb was last seen on February 20, 2003.  On November 5, 2004, Dr. Saito responded to HIGA, stating that Webb was "evaluated in our clinic on November 5, 2004[,]" "continues with left hip pain that is rated 5/10 on a 0 to 10 scale[,]" and "has been receiving ongoing treatments involving acupuncture for pain relief to his left hip."  Dr. Saito also stated that Webb "has been paying for these treatments on his own as he has been unable to get the [HIGA] to pay for treatments.  He related to me a hearing with the Department of Labor in 2003 but was unable to get a ruling either in favor of or against him for ongoing acupuncture treatments."

On June 24, 2005, OSF through HIGA made a payment via check in the amount of $139.49 to Kaiser Foundation Hospitals on behalf of Webb for medical services from November 5, 2004 to November 23, 2004.

On December 28, 2005, HIGA filed a WC-3 Carrier's Case Report as a "Year End Report" for 2005.[2]  The report noted a "Medical/Other Costs" benefit payment of $139.49, and stated in the comments section that "no payments [were] made in 2004."

---

[2]     HRS § 386-95 (2015) sets out requirements for employers to report work injuries to the Director, including that "[b]y January 31 of each year, the employer shall file with the director a report with respect to each injury on which the employer is continuing to pay compensation, showing all amounts paid by the employer on account of the injury."

On December 27, 2004, HIGA filed a WC-3 Carrier's Case Report as a "Year End Report" for 2004. The comments section for this report noted that "no payments [were] made in 2004[.]"

On March 5, 2007, HIGA filed a WC-3 Carrier's Case Report (**2007 WC-3 Report**) as a final report for 2007 with a copy sent to Webb at his address. The report reflected the lump sum paid for permanent partial disability ($17,936.64) and the total payments made for medical/other costs ($8,175.68). The report further indicated that Webb was last treated on November 23, 2004. Included at the bottom of the 2007 WC-3 Report was a "Notice to Employee" stating: "With the final payment of compensation (as indicated hereon) on your industrial injury of 04/01/1999 identified as Case No. 29904705 the case shall be closed. This determination shall not constitute a bar to your reopening rights as provided by Section 386-89, HRS, nor to future medical benefits."

**D. Webb's 2017 Application to Reopen His Case and DCD's 2017 Decision**

On April 26, 2017, Dr. Joseph R. DiCostanzo, M.D. (**Dr. DiCostanzo**) mailed a treatment plan request for additional services (**DiCostanzo Treatment Plan**) for Webb to HIGA. The DiCostanzo Treatment Plan included a diagnosis of: 1) "right knee joint pain > 3 months"; 2) "right shoulder joint pain > 3 months"; 3) "right iliotibial band syndrome"; and 4) "left hip injury[.]" The services requested stated "Physician treatment beyond 120 days or 120 day collaborative care by covering KP MD, PA, or APRN[.]"

In a letter dated May 2, 2017, OSF/HIGA's counsel advised the DCD that the DiCostanzo Treatment Plan was denied, stating that the denial was based in part on HRS § 386-89(c).

On May 18, 2017, Webb filed a WC-5 Employee's Claim for Workers' Compensation Benefits Form (**2017 WC-5 Form**), which indicated that the reason for filing it was "[r]eopening of old claim." This form indicated Dr. DiCostanzo as the attending physician. The 2017 WC-5 Form served as Webb's application to reopen his workers' compensation case. See Hawaiʻi Administrative Rules (**HAR**) § 12-10-63 (eff. 1981).

In response, OSF/HIGA asserted, among other things, that Webb's attempt to reopen his 1999 claim was barred by HRS § 386-89(c) and that Webb could not meet his burden of proof to show by substantial evidence a change in condition.

A DCD hearing was held on September 6, 2017. On November 3, 2017, the Director through the DCD issued a decision (**2017 DCD Decision**) addressing 1) whether Webb was "entitled to a reopening for further medical treatment" and 2) whether Webb was "entitled to treatment pursuant to the treatment plan of [Dr. DiCostanzo], dated 4/26/2017[.]" In its Findings of Fact, the Director stated that:

> [OSF's] testimony and the final WC-3 for the year 2005 indicates the last payment of a benefit on this claim was for medical benefits paid in the year 2005 in the amount of $139.49.
>
> Dr. DiCostanzo's treatment plan dated 4/26/2017 indicates treatment was being requested for right knee

8

> joint pain, right shoulder joint pain, right iliotibial band syndrome and the left hip injury.
>
> [Webb's] testimony indicates the following: 1) [Webb] did not receive any treatment pursuant to Dr. DiCostanzo's treatment plan dated 4/26/2017; 2) [Webb] was requesting a reopening for further medical treatment for the left hip/leg and right knee; 3) the problems with the left hip/leg have been present since the industrial injury occurred on 4/1/1999; and 4) the problems with the right knee have been present for the past ten years.
>
> The WC-5 filed on 5/18/2017 indicates [Webb] was requesting a reopening of an old claim as [HIGA] failed to return calls.

The Director denied Webb's request for a reopening and medical treatment under the DiCostanzo Treatment Plan, pursuant to HRS § 386-89(c), stating:

> The Director finds, based upon the above Findings of Fact and Principles of Law, the claimant's request for a reopening for further benefits, or any other injured body parts under this claim (including the treatment requested in the treatment plan dated 4/26/2017), is denied. The Director credits the employer's testimony, the final WC-3 for the year 2005, Dr. DiCostanzo's treatment plan dated 4/26/2017, the claimant's testimony, and the WC-5 filed on 5/18/2017, and determines the claimant's right to further benefits is barred by the eight-year statute of limitations pursuant to Section 386-89, HRS.

(Emphasis added.)

**E.   2019 LIRAB Decision**

Webb filed an appeal to the LIRAB from the 2017 DCD Decision. The issue before the LIRAB was whether the Director erred in denying Webb's request to reopen his claim for the work injury sustained in 1999, for treatment under Dr. DiCostanzo's 2017 Treatment Plan.

The LIRAB held a trial over the course of two days in November 2018. In addition to considering exhibits, the LIRAB

9

heard testimony from Webb and Lianne Ching (**Ching**), the claims examiner for HIGA.  On August 21, 2019, the LIRAB issued a decision and order (**2019 LIRAB Decision**) affirming the Director, with majority and concurring opinions.  The LIRAB majority made findings, including:

> 1.  On April 1, 1999, Claimant sustained a work injury to his low back and left hip.
>
> . . .
>
> 6.  Based on the Director's unchallenged March 12, 2003 decision, the Board finds that Claimant was awarded medical care, services and supplies for the left hip, but not for the low back, which resolved.
>
> 7.  The Board finds that Claimant's April 1, 1999 work injury claim was properly and administratively closed by Employer in 2007, by a final WC-3 report, after Claimant last treated with Dr. Saito on November 23, 2004.  The Board credits Ms. Ching's testimony.
>
> 8.  The Board credits Ms. Ching's testimony that it was Employer's practice to mail copies of Claimant's WC-3 reports to Claimant's home address.  The Board finds that Claimant's allegation of "gross mismanagement" of Claimant's file, including "concealing" the 2007 closure of Claimant's case in March 2007, is unsupported by the credible evidence in this case.
>
> 9.  The Board finds that Claimant's May 18, [2017] WC-5 request for reopening of his April 1, 1999 work injury for medical treatment was <u>filed more than eight years after Employer's last payment for medical benefits and is therefore barred by the applicable 8-year statute of limitations</u>.
>
> 10.  The Board finds no treatment plan requests were submitted after the Director's 2003 decision, until 2017.
>
> 11.  <u>The Board finds that Claimant's 2017 request for reopening for an alleged change in condition is barred by the 8-year statute of limitations for reopening a claim.  Claimant did not meet his burden, by substantial evidence, to support his application for reopening.</u>

(Emphases added.)

In its analysis, the LIRAB majority stated that Webb's records show that after his last treatment with Dr. Saito in November 2005, he sought treatment under his private medical insurance and only sought further treatment under workers' compensation in 2017.  The LIRAB majority further stated:

> Contrary to Claimant's allegation that Employer had the burden of proof regarding a statute of limitations defense, Section 386-89(c), HRS and the applicable case law clearly establish that it is Claimant's burden to show, by substantial evidence, a change in or a mistake in a determination of fact relating to the claimant's physical condition.  The presumption applies only to the work-relatedness of the injuries once a case is reopened, not to reopening or review.  In the instant case, the Board finds that Claimant did not present substantial evidence to support his request for reopening.

(Emphases added.)  The LIRAB majority ultimately concluded that Webb's request for reopening was barred by the "statute of limitations" under HRS § 386-89(c).[3]

---

[3]    The LIRAB majority also concluded Webb's 2017 claims related to his right wrist and right leg/knee were barred by HRS § 386-82 (2015).  The LIRAB majority found these were additional injuries that were not part of the April 1, 1999 work injury, such that 2-year and 5-year limitation periods applied under HRS § 386-82, which states:

> The right to compensation under this chapter shall be barred unless a written claim therefor is made to the director of labor and industrial relations[:]
>     (1) Within two years after the date at which the effects of the injury for which the employee is entitled to compensation have become manifest; and
>     (2) Within five years after the date of the accident or occurrence which caused the injury.

We decide this case under the eight-year period for reopening a claim under HRS § 386-89(c) and thus do not reach any issues pertaining to HRS § 386-82.

The LIRAB concurring opinion, on the other hand, stated that employer OSF was raising a statute of limitations defense under HRS § 386-89(c) that the eight-year period had expired.  The concurring opinion further stated:

> I find that a statute of limitations defense is an affirmative defense and that Employer, who raises a defense based on a statute of limitations, has the burden of proving that Claimant's reopening request is barred by the time limitations provisions under HRS Section 386-89(c). Therefore, in my view, <u>it is Employer's burden of proof to support its statute of limitations defense under HRS Section 386-89(c)</u>.

(Emphasis added.)  The concurring opinion found, among other things, that Webb's claim was administratively closed by a WC-3 Final Report filed on March 6, 2007, and that his request to reopen was barred by the eight-year limitations period under HRS § 386-89(c) because his request to reopen was filed about twelve years after the last payment of compensation made by Employer in 2005.  The concurring opinion noted it was thus unnecessary "to address whether Employer ha[d] rebutted the presumption of compensability by substantial evidence," i.e., whether OSF had rebutted Webb's claims that his current right wrist and right knee injuries were related to the primary injury of April 1999.

**F.   The ICA Decision**

On September 4, 2019, Webb timely filed a Notice of Appeal to the ICA from the 2019 LIRAB Decision.  At the ICA, Webb raised six points of error, including that the LIRAB erred by not requiring OSF/HIGA to prove essential facts for a statute

12

of limitations defense under HRS § 386-89(c), and by determining that Webb's workers' compensation case was properly closed.  The ICA affirmed the LIRAB.  With regard to the burden of proof under HRS § 386-89(c), the ICA concluded that the LIRAB "did not clearly err in finding that Webb did not provide substantial evidence to support his reopening application."

We granted Webb's application for writ of certiorari to address whether Webb or OSF/HIGA had the burden of proof to show if Webb's reopening request was within the eight-year statute of limitations period under HRS § 386-89(c).

### III. STANDARD OF REVIEW

In this case, we interpret a workers' compensation statute.

> The interpretation of a statute is a question of law that is reviewed de novo.
>
> > When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
> >
> > When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists . . . .
> >
> > In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.  Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

Botelho v. Atlas Recycling Ctr., LLC, 146 Hawaiʻi 435, 442, 463 P.3d 1092, 1099 (2020) (citations and quotation marks omitted).

## IV.  DISCUSSION

### A.  The Eight-Year Period in HRS § 386-89(c) is a Statute of Limitations For Which the Employer Has the Burden of Proof

Webb raised a variety of issues before the ICA that are not entirely consistent with the questions he raises before this court.[4]  However, one issue before the LIRAB that he argued to both the ICA and to this court is that the burden of proof related to reopening of a claim under HRS § 386-89(c) rests on the employer.  Webb argued to the ICA that the LIRAB majority conflated two different requirements under HRS § 386-89(c) — first, the requirement that an application for reopening of the claim is made within the eight-year period after the last compensation was paid; and second, the requirement to show by substantial evidence a change in, or a mistake in a determination of fact as to, the physical condition of the injured employee.  Webb argued to the ICA that employer OSF had the burden of proof as to both requirements under HRS § 386-89(c).

In addressing this issue, the ICA stated: "Here, the [LIRAB] found that Webb did not meet his burden to support his application for reopening.  We conclude that the [LIRAB] did not

_____

[4]   Webb's application for writ of certiorari to this court asserts the following issues which were not issues before the LIRAB or points of error raised in the ICA: whether there should have been scrutiny of HIGA's breach of good faith for unilateral termination and concealment; whether such errors contributed to years-long denial of benefits to Webb.  These issues are deemed waived and we will not address them.

clearly err in finding that <u>Webb did not provide substantial evidence to support his reopening application</u>."  (Emphasis added.)  Although the ICA's discussion on burden of proof did not specify what aspect of HRS § 386-89(c) it was addressing (i.e., the eight-year requirement or a change in condition), the ICA SDO later recognized that "the [LIRAB] concluded that Webb's 2017 request for reopening for an alleged change in condition was <u>barred by the 8-year statute of limitations for reopening a claim</u>."  (Emphasis added.)  It thus appears the ICA held that Webb had the burden of proof to establish that his reopening request was timely under the statutory eight-year requirement.

Moreover, as previously explained, the LIRAB had a split of opinion as to which party bears the burden of proof regarding the eight-year statute of limitations.  The LIRAB majority seems to have relied on language in HRS § 386-89(c), pertaining to the need for substantial evidence on a claimant's change in condition, and extrapolated that to hold that the claimant also has the burden of proof on the eight-year requirement.  The LIRAB concurring opinion, on the other hand, expressly treated the eight-year period as a statute of limitations, and thus as an affirmative defense raised by OSF/HIGA.  The concurring opinion determined that OSF/HIGA "has the burden of proving that [Webb's] reopening request is barred by the time limitations provisions under HRS Section 386-89(c)."

The concurring opinion then concluded that OSF/HIGA met their burden to show that Webb's reopening claim was untimely.

We focus on the burden of proof for the requirement in HRS § 386-89(c) that an application to reopen a claim must be made "prior to eight years after date of the last payment of compensation[.]"  If an application for reopening is barred by the eight-year period, it is not necessary to address the other requirement of a showing by substantial evidence of a change in, or a mistake in a determination of fact as to, the physical condition of the injured employee.[5]

HRS § 386-89(c) is silent as to which party has the burden of proof on the requirement that application for reopening be made in the eight-year period.  The applicable administrative rule for reopening a workers' compensation case

---

[5]    We note that this court, in De Victoria v. H & K Contractors, 56 Haw. 552, 556, 561, 545 P.2d 692, 696, 699 (1976), stated that "[w]e do not believe that a showing of substantial evidence is necessary as a prerequisite to a review by the Director or the [LIRAB] of an application under subparagraph (c) of HRS § 386-89," and held that:

> a proceeding brought by a claimant under HRS s 386-89(c) is plainly a 'proceeding for the enforcement of a claim for compensation under (our workmen's compensation) chapter.' HRS s 386-85.  Where . . . the primary issue is whether or not an injury is related to a work accident, a claimant is entitled to the same presumption on review of a case once closed that his claim is for a covered injury as that in an original hearing.

See also Mitchell v. BWK Joint Venture, 57 Haw. 535, 548, 560 P.2d 1292, 1300 (1977) (citations omitted) (noting the "presumption that 'the claim is for a covered work injury' in the absence of substantial evidence to the contrary").

is likewise silent as to the burden of proof.  HAR § 12-10-63 provides:

> (a) An application for reopening of a case pursuant to section 386-89, HRS, shall be in writing, shall state specifically the grounds upon which the application is based, and shall be served upon each party at the time of filing with the director.
>
> (b) Whenever an application for reopening of a case is made, the director shall review the case file and may, by discretion, hear the interested parties.  The director shall deny or grant a reopening and notify the parties in writing.

The LIRAB majority and concurring opinions, and the parties, refer to the eight-year period as a "statute of limitations."  We agree that the eight-year period under HRS § 386-89(c) serves as a statute of limitations.  The plain effect of the eight-year period is that it sets a time limit within which an application for reopening should be made.  We agree with the LIRAB's concurring opinion that, as a statute of limitations, the eight-year period in HRS § 386-89(c) is properly treated as an affirmative defense, and thus, the employer has the burden of proof on this issue.

We note that HRS § 386-89(c) is titled "Reopening of cases; continuing jurisdiction of director."  Neither party contends that the eight-year period serves as a jurisdictional prerequisite for the Director to act.  "Where a statute is ambiguous, its title may be referred to as an aid in construing the statute."  Tauese v. State, Dep't of Lab. & Indus. Rels., 113 Hawaiʻi 1, 37, 147 P.3d 785, 821 (2006)

17

(quoting Honolulu Star Bull., Ltd. v. Burns, 50 Haw. 603, 606, 446 P.2d 171, 173 (1968)).  Here, however, we conclude the statute plainly sets out the eight-year period as a statute of limitations and not a bar to the Director's jurisdiction. First, there is no reference in the statutory language that a jurisdictional bar is intended.

Second, given the humanitarian purposes of the workers' compensation scheme, HRS § 386-89(c) must be liberally construed in favor of injured employees.  "[T]his court has long recognized the remedial character of the workers' compensation statutes and has construed them liberally to effectuate their beneficent purposes."  Puchert v. Agsalud, 67 Haw. 25, 36, 677 P.2d 449, 457 (1984) (citations omitted); Van Ness v. State, Dep't of Educ., 131 Hawai‘i 545, 558, 319 P.3d 464, 477 (2014) ("[T]he broad humanitarian purpose of the workers' compensation statute read as a whole requires that all reasonable doubts be resolved in favor of the claimant." (quoting Lawhead v. United Air Lines, 59 Haw. 551, 560, 584 P.2d 119, 125 (1978))).

It is beneficial to employees to construe the eight-year period as a statute of limitations, rather than a requirement that could preclude the Director from having jurisdiction to consider a reopening application.  As a statute of limitations, the eight-year period would properly be treated as an affirmative defense that the employer must establish and

which can be waived.  Hawaiʻi law generally treats statutes of limitations as affirmative defenses.  See Pac. Lightnet, Inc. v. Time Warner Telecom, Inc., 131 Hawaiʻi 257, 281, 318 P.3d 97, 121 (2013); State v. Stan's Contracting, Inc., 111 Hawaiʻi 17, 33, 137 P.3d 331, 347 (2006) (citations omitted); Hawaiʻi Rules of Civil Procedure Rule 8(c) (listing statute of limitations as an affirmative defense).  Moreover, the party asserting an affirmative defense generally has the burden of proving the facts essential to the defense.  See, e.g., U.S. Bank Nat. Ass'n v. Castro, 131 Hawaiʻi 28, 41, 313 P.3d 717, 730 (2013) (citation omitted); Lambert v. Waha, 137 Hawaiʻi 423, 432, 375 P.3d 202, 211 (2016) (citations omitted) (for the affirmative defense of adverse possession, defendant asserting the defense had the burden "to produce admissible evidence to support the elements of adverse possession"); Molokoa Vill. Dev. Co. v. Kauai Elec. Co., 60 Haw. 582, 589, 593 P.2d 375, 380 (1979); Quinn v. Wilshire Ins. Co., 53 Haw. 19, 21, 486 P.2d 59, 60 (1971) (citations omitted) (when an insurer relies on an exclusionary clause of a policy as an affirmative defense to liability, "it has the burden of proving facts which bring the case within the exclusion"); In re Dowsett Tr., 7 Haw. App. 640, 646, 791 P.2d 398, 402–03 (1990) (for the affirmative defense of res judicata, "the party asserting the defense has the burden of proving

adequate representation of the interests and proper protection of the rights of the nonparty in the prior action").

Placing the burden of proof on employers rather than employees further effectuates the humanitarian purposes of the statute because employers are more likely to be in possession of the documentation showing the last payment of compensation. It is thus consistent with the workers' compensation scheme that employers have the burden of proof to establish whether the eight-year period has been met.

In other jurisdictions, statutes for reopening a workers' compensation case have generally been treated as statute of limitations defenses.

> Among the issues affecting reopening time periods, there may be noted the question whether failure to make timely application goes to the Commission's jurisdiction or merely gives rise to an affirmative defense which may be waived, for example, by failure to raise it promptly. The majority rule here, as in the case of original notice or claim, is that the defect is not jurisdictional and may be waived, but the opposite view has some case support.

13 Arthur Larson, Lex K. Larson & Thomas A. Robinson, Larson's Workers' Compensation Law § 131.02[5] (Matthew Bender, rev. ed. 2024). See also Lang v. Erlanger Tubular Corp., 206 P.3d 589, 590, 592 (Okla. 2009) (affirming the Workers' Compensation Court denial of Claimant's "Motion to Reopen" because it was barred by the limitation period); Gang v. Montgomery Cnty., 211 A.3d 355, 369 (Md. 2019) (determining plaintiff's claim was not barred by

the reopening provision's "statute of limitations"); Vest v.
Giant Food Stores, Inc., 620 A.2d 340, 341-43 (Md. 1993) (five-
year period from last payment of compensation to reopen a
workers' compensation award treated as a limitations period);
Calvert v. Indus. Claim Appeals Off., 155 P.3d 474, 476 (Colo.
App. 2006) (explaining "[t]he time limits set forth in [the
reopening provision] operate as a statute of limitations")
(citation omitted); Granite Constr. Co. v. Workers' Comp.
Appeals Bd., 112 Cal. App. 4th 1453, 1457 (Cal. Ct. App. 2003)
(explaining that the reopening provision of the labor code,
"establishes a five-year statute of limitations for claims of
further disability"); Newton v. Workers' Comp. Appeals Bd., 17
Cal. App. 4th 147, 154 (Cal. Ct. App. 1993) (citations omitted)
(explaining "the statute of limitations provisions in the Labor
Code must be liberally construed in favor of the injured
employee").

Under Hawaiʻi's workers' compensation scheme, the time
period for asserting the original notice or claim is treated as
a statute of limitations. See Hayashi v. Scott Co., 93
Hawaiʻi 8, 9, 11-12, 994 P.2d 1054, 1055, 1057-58 (2000)
(construing HRS § 386-82). Thus, in the context of the entire
workers' compensation scheme, it is consistent to construe an
application for reopening a workers' compensation claim in a
similar manner. The definition of a "statute of limitations"

includes "[a] law that bars claims after a specified period[,]" and "[t]he purpose of such a statute is to require diligent prosecution of known claims, thereby providing finality and predictability in legal affairs and ensuring that claims will be resolved while evidence is reasonably available and fresh." Statute of Limitations, Black's Law Dictionary (12th ed. 2024). This court has explained that "[t]he primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend." Levi v. Univ. of Haw., 67 Haw. 90, 93, 679 P.2d 129, 131 (1984) (quoting 51 Am. Jur. 2d Limitations of Actions § 17); see also Shin v. McLaughlin, 89 Hawaiʻi 1, 6, 967 P.2d 1059, 1064 (1998) ("It is generally recognized that the purpose of the statutes of limitations is to encourage promptness in the prosecution of actions and thus avoid the injustice which may result from the prosecution of stale claims. Statutes of limitations attempt to protect against the difficulties caused by lost evidence, faded memories and disappearing witnesses." (quoting Byrne v. Ogle, 488 P.2d 716, 718 (Alaska 1971))); Wiegand v. Allstate Ins. Co., 68 Haw. 117, 122, 706 P.2d 16, 20 (1985) ("The purpose of a statute of limitations is to discourage delay and the presentation of stale claims.").

Further, a statute of limitations is a policy decision by the Legislature.

> Statutes of limitations are best understood as an accommodation of competing interests: the plaintiff wishes to have a reasonable time to bring the suit . . . while the defendant, on the other hand, seeks to avoid having to defend against stale claims.  Limitation statutes afford plaintiffs what the legislature deems a reasonable time to present their claims.  They reflect policy determinations of the legislature and represent a policy decision regarding what constitutes an adequate period of time for a person of ordinary diligence to pursue a claim.

51 Am. Jur. 2d Limitation of Actions § 2 (2024).  With respect to HRS § 386-89(c) and its predecessor statutes, the Territorial and State Legislatures of Hawaiʻi have addressed multiple times the policy question of the appropriate time period in which an application to reopen a workers' compensation case must be made.

Hawaiʻi's first Workers' Compensation Act was adopted in 1915.  1915 Haw. Sess. Laws Act 221, at 323-50.  In 1939, the Act was amended to expressly state the period in which a workers' compensation case could be reopened, providing:[6]

> Sec. 7517.  **Reopening case; modification of awards and agreements**. . . .
>
> On the application of any party on the ground of a change of conditions, the board may, at any time within seven years after the date of the injury or accident or within three years after the date of final payment of compensation previously awarded, whichever period is longer, and not oftener than once in six months, review any

---

[6]    The Workers' Compensation Act (then, the "Workmen's Compensation Act") was first codified in the Revised Laws of Hawaiʻi (**RLH**) in 1925, then renumbered multiple times.  See, e.g., RLH §§ 3604-3667 (1925); RLH §§ 7480-7541 (1935); RLH §§ 4401-4467 (1945); RLH §§ 97-1 to 97-123 (1955).  In 1963, the legislature subsequently recodified RLH chapter 97 as HRS chapter 386.  See RLH Tables of Disposition, Table 1, at 9 (1968); HRS chapter 386 (1968) (indicating as a historical note, "[t]his chapter is based on L 1963, c 116, which completely revised and reenacted this chapter"); see also 1963 Haw. Sess. Laws Act 116, at 103-28.

23

> agreement or award, and on review may make an award ending, diminishing or increasing the compensation previously agreed upon or awarded subject to the maximum and minimum provided in this chapter[.]

1939 Haw. Sess. Laws Act 206, § 3 at 306 (emphasis added).  A prior version of the 1939 bill had provided no limit for reopening a case, but a report by the House Committee on Judiciary explained why a time limitation was added:

> In computing premiums on compensation policies, it is necessary that some rule should obtain under which the premiums may be more or less definitely fixed, and your Committee believes that while an award should be subject to reopening at any time for fraud, nevertheless, where it is sought by either party to reopen it because of changed conditions, there should be a limitation of seven years from the date of the injury or accident or three years from the date of the last payment of compensation whichever period is the longer, and your Committee has therefore amended the second paragraph of section 7517, as contained in section 3 of the Bill, accordingly.

H. Stand. Comm. Rep. No. 396, in 1939 House Journal, at 1340 (emphasis added).

In 1953, the relevant provision was amended to state:

> the director may, at any time prior to three years after date of the last payment of compensation, . . . or at any time prior to three years after the rejection of a claim, review a compensation case and issue a new decision which may terminate, continue, reinstate, increase or decrease such compensation, or award compensation.

1953 Haw. Sess. Laws Act 51, § 1 at 167.

In 1955, the reopening statute was amended to change the period of time from three years after the date of last payment of compensation or rejection of a claim, to ten years after the date of last payment of compensation or rejection of a claim.  1955 Haw. Sess. Laws Act 5, § 1 at 4.

Finally, in 1985, the applicable time period under HRS § 386-89(c) was adopted, changing the ten-year period to the eight-year period. 1985 Haw. Sess. Laws Act 296, § 9 at 645-46. Thus, the relevant part of the statute now reads:

> On the application of any party in interest, supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, <u>at any time prior to eight years after date of the last payment of compensation</u>, whether or not a decision awarding compensation has been issued, <u>or at any time prior to eight years after the rejection of a claim</u>, review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation.

(Emphases added.) Addressing the 1985 amendment on reopening a case, the House Committee on Employment Opportunities and Labor Relations and the House Committee on Consumer Protection and Commerce issued a joint committee report stating:

> The purpose of Section 11 of this Bill is to amend the provisions of section 386-89(c) to reduce the ten-year <u>time limit</u> for reopening applications to an eight-year <u>time limit</u> for reopening requests.
>
> Your Committees believe that a shorter timeframe <u>furthers the timely and expeditious disposition of cases</u> within the Department of Labor and Industrial Relations.

H. Stand. Comm. Rep. No. 326, in 1985 House Journal, at 1130 (emphases added). Describing the overall purpose of the 1985 legislation, the Senate Committee on Labor and Employment explained that:

> The purpose of this bill is to amend the Workers' Compensation law to make the system both effective and efficient. . . .
>
> After careful review of both house drafts of this measure and consideration of recommendations proposed in the Study of Workers' Compensation Program of the State of Hawaii by Haldi Associates, Inc. as submitted by the

> Legislative Auditor . . ., your Committee recognizes the need to effectively reform existing insurance and workers' compensation laws.  <u>Alternate approaches consistent with the humanitarian objectives and purposes of the workers' compensation law have been adopted to achieve meaningful controls upon costs and to reestablish the integrity of the process of claim handling and rate making.</u>

S. Stand. Comm. Rep. No. 806, in 1985 Senate Journal, at 1230 (underlining deleted and added).  Further, the Senate Ways and Means Committee explained generally that "[t]he purpose of this bill is to address a major insurance crisis confronting employers and businesses in Hawaii brought about by skyrocketing costs of workers' compensation insurance coverage in recent years."  S. Stand. Comm. Rep. No. 853, in 1985 Senate Journal, at 1254.

Given this history of the current eight-year time period, the Legislature has expressed an intent to set a time limit by statute for reopening a workers' compensation case for policy reasons that include: the ability to better compute premiums, the timely disposition of cases, balancing the humanitarian purpose of workers' compensation with meaningful controls on the cost, and promoting integrity in claims handling and rate making.  Consistent with this intent, we conclude it is proper to construe the eight-year period in HRS § 386-89(c) as a statute of limitations.

As noted above, because the eight-year period under HRS § 386-89(c) is a statute of limitations, it operates as an affirmative defense for which employer OSF had the burden of

proof.  In this case, OSF clearly raised the eight-year limit in responding to Webb's application to the Director to reopen his case.  Further, the eight-year period was triggered by the "date of the last payment of compensation" and the record shows that OSF established the last payment of workers' compensation benefits made by OSF/HIGA was in 2005.  Webb's application to reopen was filed with the Director on May 18, 2017,[7] nearly twelve years after the last payment of compensation made by OSF/HIGA in 2005.  OSF/HIGA thus met their burden to prove that Webb's application to reopen his workers' compensation case is barred by the eight-year limitations period under HRS § 386-89(c).

**B.    The ICA Did Not Err in Holding that Webb's Workers' Compensation Case was Properly Closed in 2007**

Webb argues that the ICA erred in affirming the administrative closure of his workers' compensation claim because HRS § 386-95 (2015) does not provide an administrative basis for closure of a claim.[8]  Webb cites to the portion of HRS § 386-95, governing reports of injuries, other reports, and penalty, which provides in relevant part, "[w]ithin thirty days after final payment of compensation for an injury, the employer

---

[7]    HAR § 12-10-63 provides, *inter alia*, that an application for reopening of a case under HRS § 386-89 shall be in writing and served upon each party at the time it is filed with the Director.

[8]    It should be noted that neither the 2019 LIRAB Decision nor the ICA's SDO discuss or rely on HRS § 386-95.

shall file a final report with the director showing the total payments made, the date of termination of temporary total disability, and such other information as the director may require."  Webb appears to believe that HRS § 386-95 is applicable here because he asserts the statute "is the only worker's compensation statutory reference to reports."  The ICA held that "when HIGA filed the final WC-3 indicating that Webb's file was to be closed . . . the claim was properly closed."

The ICA relied on Skahan v. Stutts Construction Co., No. CAAP-16-0000537 and No. CAAP-16-0000538, 2019 WL 3765413 (Haw. App. Aug. 9, 2019) (SDO), cert. denied, No. SCWC-16-0000537 and No. SCWC-16-0000538, 2019 WL 6737092.  In Skahan, a claimant asserted that the LIRAB erred in denying his request for a reopening of his workers' compensation claim.  Id. at *3.  The LIRAB concluded that the claimant's request to reopen was filed more than eight years after the last date of compensation was paid by his employer for the work injury, and was therefore barred by the eight-year statute of limitations provided by HRS § 386-89(c).  Id. at *9.  In holding the LIRAB did not err in denying the claimant's request to reopen, the ICA determined that the claimant was aware of the last payment of compensation because the insurance carrier notified him that his case would be closed following the final payment of compensation, but that

28

the claimant could reopen his claim pursuant to HRS § 386-89. Id.

Similarly, here, Webb sought to reopen his workers' compensation claim, but the LIRAB found that his request to reopen was filed more than eight years after the last date of compensation was paid by OSF/HIGA for his work injury, and was therefore time barred by HRS § 386-89(c).  The record, which includes a declaration and testimony by HIGA's claims examiner Ching, indicates the 2007 WC-3 Report was filed as a "Final Report" with a copy sent to Webb at his address and that the last payment by HIGA was in 2005.  Included at the bottom of the 2007 WC-3 Report was a "Notice to Employee" stating that: "With the final payment of compensation (as indicated hereon) on your industrial injury of 04/01/1999 identified as Case No. 29904705 the case shall be closed.  This determination shall not constitute a bar to your reopening rights as provided by Section 386-89, HRS, nor to future medical benefits."  (Emphasis added.) Webb does not contest that he was sent the 2007 WC-3 Report containing this information.  Thus, it appears that Webb was aware his case had been closed but that he could reopen his claim pursuant to HRS § 386-89.

Webb also points to HRS § 386-31(b) (Supp. 2023) and argues that the phrase "these benefits" in that statute should

be construed liberally to include all of the "independent rights" to statutory workers' compensation benefits announced in Bocalbos v. Kapiolani Medical Center for Women & Children, 89 Hawai'i 436, 974 P.2d 1026 (1999) and Lindinha v. Hilo Coast Processing Co., 104 Hawai'i 164, 86 P.3d 973 (2004).[9]  However, HRS § 386-31(b) governs *temporary total disability*, stating:

> The payment of these benefits shall only be terminated upon order of the director or if the employee is able to resume work.  When the employer is of the opinion that temporary total disability benefits should be terminated because the injured employee is able to resume work, the employer shall notify the employee and the director in writing of an intent to terminate the benefits at least two weeks prior to the date when the last payment is to be made.  The notice shall give the reason for stopping payment and shall inform the employee that the employee may make a written request to the director for a hearing if the employee disagrees with the employer.  Upon receipt of the request from the employee, the director shall conduct a hearing as expeditiously as possible and render a prompt decision as specified in section 386-86.  If the employee is unable to perform light work, if offered, temporary total disability

---

[9]      In Bocalbos, this court held in relevant part that:

One of the primary purposes of the Hawai'i workers' compensation law is the prompt determination and disposition of claims for compensation.  Under the law, claimants are entitled to: (1) medical care, services, and supplies immediately after a work injury and so long as reasonably needed, HRS § 386-21 (Supp.1998); (2) weekly wages for temporary disability, HRS §§ 386-31(b) (1993) and 386-32(b) (Supp.1998); and (3) weekly wages for permanent disability, HRS §§ 386-31(a) (1993) and 386-32(a) (Supp.1998).  These medical and wage benefits are independent benefits, separate and distinct from one another.

89 Hawai'i at 442, 974 P.2d at 1032 (citations omitted).

In Lindinha, this court discussed Bocalbos to conclude that an order denying an HRS § 386-93(b) request for fees and costs is a final order for purposes of appeal in worker compensation cases.  104 Hawai'i at 169, 86 P.3d at 978.

> benefits shall not be discontinued based solely on the inability to perform or continue to perform light work.

(Emphases added.)

Webb's argument on this issue is not meritorious. First, neither the 2019 LIRAB Decision nor the ICA's SDO discuss or rely on HRS § 386-31(b) in concluding that his workers' compensation case was properly closed in 2007.

Second, HRS § 386-31(b) does not apply to Webb because the record shows that Webb, OSF, and HIGA stipulated that Webb sustained "permanent partial disability" to his left hip/leg. A plain reading of HRS § 386-31(b) requires that the "work injury cause[] total disability not determined to be permanent in character" in order for the statute to apply. Webb's work injury does not fall under the purview of HRS § 386-31(b), and thus the statute is inapplicable here.

Third, Webb does not provide any argument as to how his proposed interpretation of HRS § 386-31(b) affects the ICA's holding that Webb's workers' compensation case was properly closed. As discussed above, the ICA reasoned that HIGA sent the 2007 WC-3 report as a final report, which advised Webb his case was to be closed. Further, as argued by OSF/HIGA to the ICA, by the time the 2007 WC-3 final report was filed in March 2007, it had been over two years since HIGA had received any medical billing for Webb. The last billing had been received in November of 2004. Under HRS § 386-21(g), failure of a medical

31

services provider to bill the employer or insurer within two years of the date of service results in forfeiture of the provider's right to payment.  Thus, when the 2007 WC-3 final report was filed, it was reasonable for Webb's case to be closed.  Webb's reliance on HRS § 386-31(b) is misplaced.

In sum, Webb does not raise any meritorious arguments that the ICA gravely erred in holding that Webb's workers' compensation case was properly closed.

## V.    CONCLUSION

For the reasons set forth herein, we affirm the ICA Judgment on Appeal.

Christopher R. Evans                     /s/ Mark E. Recktenwald
for petitioner

                                         /s/ Sabrina S. McKenna
Matthew K. Wong
for respondents                          /s/ Todd W. Eddins

                                         /s/ Lisa M. Ginoza

                                         /s/ Vladimir P. Devens